## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| BRIAN S. HOOKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 11-1276 (ABJ) |
| | ) | |
| U.S. DEPARTMENT OF HEALTH AND | ) | |
| HUMAN SERVICES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Brian S. Hooker brings this action against defendants Kathleen Sebelius, Secretary of the U.S. Department of Health and Human Services ("HHS"), and Thomas R. Frieden, Director of the Centers for Disease Control and Prevention ("CDC"), under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2006), challenging CDC's response to four FOIA requests he submitted on March 11, 2005 (Count I); April 20, 2005 (Count II); April 23, 2005 (Count III); and December 4, 2004 (Count IV). [1]

On November 4, 2011, defendants filed a motion for summary judgment. Defs.' Mot. for Summ. J. ("Defs.' Mot.") [Dkt. # 11]. Plaintiff did not file a cross-motion for summary

---

1    Plaintiff initially named agency officials from HHS and CDC as defendants in this lawsuit. The only proper defendant in a FOIA action is a federal agency. *See* U.S.C. § 552(a)(4)(b) (granting district court "jurisdiction to enjoin [a federal] agency from withholding agency records improperly withheld from complainant"). Plaintiff replaced the names of the agency officials with the two agencies in question. Order [Dkt. # 19], Jan. 25, 2012.

judgment; plaintiff opposed defendants' motion on December 15, 2011.  Pl.'s Response to Defs.'

Mot. for Summ. J. ("Pl.'s Opp.") [Dkt. # 15].[2]

Pursuant to the Court's July 3, 2012 Order, defendants delivered the documents withheld under Exemption 5 to chambers for *in camera* inspection to assist the Court in making a responsible *de novo* determination.  *See Ray v. Turner*, 587 F.2d 1187, 1195 (D.C. Cir. 1978). Based on the briefs and declarations submitted by the parties and the Court's *in camera* review of the records, the Court will grant in part and deny in part defendants' motion for summary judgment.

Plaintiff seeks disclosure of information that relates to a possible connection between a mercury-based compound used in vaccines and autism.  Plaintiff has a personal stake in the issue because he has a child with autism, who currently has a case pending in the judicial body commonly referred to as the "Vaccine Court."  Plaintiff contends that the information he seeks may influence the outcome of that case, and he infuses this FOIA action with the passion he brings to his advocacy on behalf of his son.

Plaintiff contends that defendants have consistently denied a relationship between the mercury-based compound and autism in the face of "a mounting body of compelling scientific literature" that supports the existence of such a relationship.  Compl. ¶ 15.  He submits that the defendants have taken the position that mercury is "perfectly safe in vaccines in the face of contrary evidence," Pl.'s Opp. at 4, and that leads him to the conclusion that defendants have acted in bad faith in this case by claiming exemptions under FOIA that are not applicable.

---

2      Plaintiff filed two documents as his opposition.  The first is entitled "Response to Defendants' Motion for Summary Judgment" and the second is entitled "Memorandum of Points and Authorities in Support of Plaintiff's Opposition to the Defendants' Motion for Summary Judgment."  Dkt. # 15.  Because they were submitted in the same filing, the Court refers to both documents as "Pl.'s Opp." and uses the pages numbers placed on the documents by plaintiff.

But the merits of the scientific dispute of great significance to parents and medical professionals alike are not at issue here, and the Court will not undertake to resolve it. It has conducted a careful *in camera* review of the documents in question, the parties' memoranda, and the supporting declarations, and it concludes that even if plaintiff's frustration with the agency's position on the science is well founded, he has not identified any facts that would demonstrate bad faith in the defendants' response to his FOIA request. Therefore, and for the specific reasons set out in detail below, the Court will grant in part and deny in part defendants' motion for summary judgment.

## I.     BACKGROUND

### A.  Count I

On March 11, 2005, plaintiff submitted a FOIA request electronically (FOIA Request No. 05-499) for all written correspondence regarding two Danish studies on the connection between vaccines containing thimerosal and occurrences of autism, which were published in 2003 in *Pediatrics* (the official journal of the American Academy of Pediatrics) and *The Journal of the American Medical Association* ("*JAMA*"). Maloney Decl. [Dkt. # 11-1] ¶ 6; Ex. B. to Maloney Decl.[3] CDC forwarded plaintiff's request to the National Immunization Program ("NIP"), the National Center for Birth Defects and Developmental Disabilities ("NCBDDD"), the National Center for Environmental Health ("NCEH"), and the Office of the Executive Secretariat ("OES") for processing. Maloney Decl. ¶ 8. Program staff in each office attempted to locate the records. Maloney Decl. ¶ 10.

---

3      Carol Maloney is the Administrative Appeals FOIA Officer for the Public Health Service ("PHS") of HHS. Maloney Decl. ¶ 1. She was responsible for "receiv[ing] and process[ing] administrative appeals of [CDC], because CDC is an organization within PHS." *Id.*

On June 24, 2005, CDC provided plaintiff with an interim response to his request, in which it released certain documents and withheld or redacted others under FOIA Exemptions 5 and 6.[4]  Maloney Decl. ¶ 11.  The interim response also informed plaintiff that his request was still being processed.  Maloney Decl. ¶ 11.  On July 17, 2005, plaintiff appealed the agency's interim response.  Maloney Decl. ¶ 12.  CDC provided plaintiff with a second interim response on September 1, 2005, informing plaintiff that NCBDDD was still processing his request, and that NIP had completed its search and failed to find any records responsive to his request.  Maloney Decl. ¶ 13.  On September 8, 2005, plaintiff appealed the agency's second interim response.  Maloney Decl. ¶ 14.

CDC provided its final response to plaintiff on October 31, 2005, in which it again released certain documents and withheld certain documents under Exemptions 4 and 5.  Maloney Decl. ¶ 14.  On November 16, 2005, plaintiff appealed the agency's final response.  Maloney Decl. ¶ 16.  On September 8, 2006, the agency released additional documents to plaintiff.  Maloney Decl. ¶ 17.  CDC's search and responses to plaintiff (including the withholdings and redactions under Exemptions 5 and 6) were upheld on appeal.[5]  Maloney Decl. ¶ 19.

---

4       Exemption 5 bars the release of "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency[.]"  5 U.S.C. § 552(b)(5).  Exemption 6 bars the release of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy[.]"  *Id.* § 552(b)(6).

5       Plaintiff states in his opposition that he received access to unredacted copies of several of the records originally redacted or withheld by CDC in response to FOIA Request No. 05-499 from Dr. David Weldon, a former member of Congress from Florida.  Pl.'s Opp. at 1; *see also* Ex. 5 to Pl.'s Opp. [Dkt. # 15-12].  The Court agrees with defendants' argument that plaintiff's case is moot as to the records of which he has received unredacted copies.  *See* Defs.' Reply at 2–3 [Dkt. # 21], citing *Crooker v. U.S. State Dep't*, 628 F.2d 9, 10 (D.C. Cir. 1980) ("Once the records are produced the substance of the controversy disappears and becomes moot since the disclosure which the suit seeks has already been made."); *see also Ctr. for Auto Safety v. EPA*,

According to defendants, the documents withheld or redacted under Exemption 5 "consist[ed] of internal e-mail communication discussing edits to draft manuscripts, data underlying manuscripts, and publication of draft manuscripts; reviewer comments; and draft correspondence . . . among CDC employees and [the Danish authors of the thimerosal study]." Defs.' Statement of Material Facts ("Def.'s SMF")¶¶ 14–15; Maloney Decl. ¶¶ 22–23. Defendants contend that the Danish researchers were acting as "temporary consultants" to CDC for purposes of Exemption 5 applicability. Defs.' SMF ¶ 15; Maloney Decl. ¶ 23. The portions of the documents redacted pursuant to Exemption 6 included "the mobile telephone number of [one of the Danish authors] and comments regarding [another author's] personal life." Defs.' SMF ¶ 17; Maloney Decl. ¶ 25.

### B.  Counts II and III

On April 20, 2005, plaintiff electronically submitted a FOIA request (FOIA Request No. 05-674) for:  (1) all correspondence among NIP researchers regarding the publication of a study of thimerosal-containing vaccines and occurrences of autism in *Pediatrics* in 2003 and (2) all correspondence between NIP researchers and the authors of the study.  Defs.' SMF ¶ 22; Maloney Decl. ¶ 28.  On April 23, 2005, plaintiff submitted an additional FOIA request

---

731 F.2d 16, 20 (D.C. Cir. 1984) (finding case to be moot with respect to four documents originally withheld by EPA but subsequently released to plaintiff by Congress).

However, the Court is unable to ascertain from plaintiff's opposition and accompanying exhibits exactly how many unredacted records plaintiff received or which records specifically were released by Dr. Weldon outside of the following two documents, which plaintiff explicitly references:  (1) "Two emails exchanged on November 13, 2002 among Marlene Lauritsen, Poul Thorsen, Kreesten Madsen, and Diana Schendel (CDC employee) regarding manuscript entitled 'Thimerosal and the occurrence of autism; Negative evidence from Danish population-based data[,]' " Doc. 1 of the *Vaughn* Index, Ex. A to Defs.' Mot. [Dkt. # 11-2]; Ex. 5C to Pl.'s Opp. [Dkt. # 15-15]; and (2) "Document, attached to January 23, 2003 email . . . containing reviewer's comments and responses thereto[,]" Doc. 9 of the *Vaughn* index, Ex. A to Defs.' Mot.; Ex. 5F to Pl.'s Opp. [Dkt. # 15-18].  As such, the Court acknowledges the mootness of plaintiff's challenges to the redactions and withholdings of those two documents and notes that challenges to any other documents later found to be released to plaintiff by Dr. Weldon are similarly moot.

(FOIA Request No. 05-680) for copies of all written correspondence between Dr. Thomas Verstraeten – a former CDC employee – and all CDC employees in NIP and the Office of the Director.  Defs.' SMF ¶ 23; Maloney Decl. ¶ 29.  On May 25, 2005, CDC sent a letter to plaintiff informing him that it had aggregated the two requests.  Maloney Decl. ¶ 30.  CDC forwarded both requests to NIP and the National Center for Infectious Diseases ("NCID").  Defs.' SMF ¶ 25; Maloney Decl. ¶ 31.

On September 9, 2005, CDC provided plaintiff with a final response to both of his requests.  Maloney Decl. ¶ 33.  In response to his first request, CDC found five responsive documents but withheld them all under Exemption 5 to FOIA.  *Id.*  In response to plaintiff's second request, CDC released certain documents and withheld or redacted certain documents under the Copyright Act and Exemptions 2, 4, and 5 to FOIA.[6]  *Id.*

On October 4, 2005, plaintiff appealed the agency's response to the HHS FOIA appeals office.  Maloney Decl. ¶ 34; Ex. T to Maloney Decl.  With respect to the first request, plaintiff claimed that the five documents found by CDC were withheld in violation of OMB Circular A-110, section 36, which is codified at 2 C.F.R. § 215.36.[7]  *Id.* at 1.  With respect to the second request, plaintiff questioned the thoroughness of CDC's search given that an initial invoice

---

6       Exemption 2 bars the release of information "related solely to the internal personnel rules and practices of an agency."  5 U.S.C. § 552(b)(2).  Exemption 4 bars the release of "trade secrets and commercial or financial information obtained from a person privileged or confidential."  *Id.* § 552(b)(4).

7       OMB Circular 110, section 36 states that "in response to a Freedom of Information Act (FOIA) request for research data relating to published research findings produced under an award *that was used by the Federal Government in developing an agency action that has the force and effect of law*, the Federal awarding agency shall request, and the recipient shall provide, within a reasonable time, the research data so that they can be made available to the public through the procedures established under the FOIA."  2 C.F.R. § 215.36 (emphasis added).

indicated that there would be approximately 1,760 pages of material but only 300 pages were released. *Id*. at 2.

On November 4, 2005, HHS provided a final response to plaintiff's appeal. Maloney Decl. ¶ 35. It determined that CDC correctly withheld or redacted documents under both Exemption 5 and the Copyright Act but that withholdings and redactions pursuant to Exemptions 2 and 4 were improper. The documents withheld under Exemption 4 were then released in full, but the documents withheld under Exemption 2 were found to be protected by Exemption 6. Maloney Decl. ¶ 38. Thus, in response to plaintiff's first request, all of the withheld documents were released with the exception of "two minor redactions under Exemption 6." Maloney Decl. ¶ 36. With respect to plaintiff's second request, HHS found that "the original estimate of 1,760 pages was inaccurate [and] the actual number of responsive documents found was 613 pages, of which 319 were withheld in their entirety." Maloney Decl. ¶ 37.

According to defendants, the documents withheld or redacted under Exemption 5 included "draft manuscripts [of a study concerning the safety of thimerosal-containing vaccines]; internal e-mail communication discussing edits to draft manuscripts, data underlying manuscripts, and publication of draft manuscripts; reviewer comments; and draft correspondence," Maloney Decl. ¶ 41, that were exchanged among CDC employees and outside researchers, including Dr. Thomas Verstraeten, *id*. ¶¶ 43–45. The portions of the documents redacted pursuant to Exemption 6 included "the email addresses, and other contact information, of individuals and other personal information, including discussions of health issues, travel plans, and family issues." Maloney Decl. ¶ 48. The remaining documents withheld or redacted by CDC were done so pursuant to the protections of the Copyright Act, and for these documents,

the *Vaughn* index "provide[d] the title and other identifying information, such that [p]laintiff [could] obtain copies of the copyrighted materials through other avenues."  Defs.' SMF ¶ 44.

### C.  Count IV

On December 14, 2004, plaintiff electronically submitted a FOIA request (FOIA Request No. 05-222) for all correspondence between CDC employees and the authors of a study presented at the Institute of Medicine's February 9, 2004 Vaccine Safety Review Committee Meeting.  Maloney Decl. ¶ 52.[8]  CDC forwarded plaintiff's request to NIP.  Defs.' SMF ¶ 47.

On January 31, 2005, CDC responded to plaintiff's request by releasing certain responsive documents.  Maloney Decl. ¶ 57.  CDC also noted that during its search, it learned that Dr. Robert Chen, an NIP employee, had received and responded to emails applicable to plaintiff's FOIA request, but he did not retain any of his replies to those emails.  Maloney Decl. ¶ 57.  On February 23, 2005, plaintiff appealed the agency's response, specifically challenging whether Dr. Chen had additional emails that were not released.  Maloney Decl. ¶ 58. After conducting an additional search, CDC confirmed that Dr. Chen did not have any additional emails and communicated this information to plaintiff in a letter dated July 19, 2005.  Maloney Decl. ¶ 59.

## II.    STANDARD OF REVIEW

"FOIA cases are typically and appropriately decided on motions for summary judgment." *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009).  As in any motion for summary judgment, the Court "must view the evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in his favor, and eschew making credibility determinations or weighing the

---

8    On December 29, 2004, plaintiff expanded the scope of this request to include Brent Taylor in the list of researchers for whom he was seeking copies of correspondence.  Maloney Decl. ¶ 49.

evidence." *Montgomery v. Chao*, 546 F.3d 703, 706 (D.C. Cir. 2008); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).   But where a plaintiff has not provided evidence that an agency acted in bad faith, "a court may award summary judgment solely on the basis of information provided by the agency in declarations."   *Moore*, 601 F. Supp. 2d at 12. The district court reviews the agency's action *de novo*, and "the burden is on the agency to sustain its action."  5 U.S.C. § 552(a)(4)(B) (2006); *accord Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

In the FOIA context, "the sufficiency of the agency's identification or retrieval procedure" must be "genuinely in issue" in order for summary judgment to be inappropriate. *Weisberg v. DOJ ("Weisberg I")*, 627 F.2d 365, 371 n.54 (D.C. Cir. 1980), quoting *Founding Church of Scientology v. NSA*, 610 F.2d 824, 836 (D.C. Cir. 1979) (internal quotation marks omitted).   Moreover, a plaintiff "cannot rebut the good faith presumption" afforded to an agency's supporting affidavits "through purely speculative claims about the existence and discoverability of other documents."  *Brown v. DOJ*, 742 F. Supp. 2d 126, 129 (D.D.C. 2010), quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks omitted).

## III.   ANALYSIS

FOIA requires the release of government records upon request.  It was enacted to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."   *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).   But Congress also recognized "that legitimate governmental and private interests could be harmed by [the] release of certain types of information and provided nine specific exemptions under which disclosure could be refused."

*FBI v. Abramson*, 456 U.S. 615, 621 (1982); *see also Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 925 (D.C. Cir. 2003) ("FOIA represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential."). The Supreme Court has instructed that FOIA exemptions are to be "narrowly construed." *Abramson*, 456 U.S. at 630.

To prevail in a FOIA action, an agency must satisfy two elements. First, the agency must demonstrate that it has made "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Second, an agency must show that "materials that are withheld . . . fall within a FOIA statutory exemption." *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 252 (D.D.C. 2005).

## A. Whether Defendants Conducted an Adequate Search with Respect to Plaintiff's FOIA Requests

Plaintiff alleges that the searches performed by CDC in response to the FOIA requests referenced in Counts I and IV were not adequate. Compl. ¶¶ 14, 39–40.[9] "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia–Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999), quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990); *see also Weisberg v. DOJ (Weisberg II)*, 705 F.2d 1344, 1351 (D.C. Cir. 1983) (internal quotation marks and citations omitted) ("The adequacy of an agency's search is measured by a standard of reasonableness and is dependent upon the circumstances of the case."). "To meet its burden, the agency may submit affidavits or declarations that explain in

---

9       Counts II and III challenge only the withholdings and redactions of records under Exemption 5 and not the adequacy of CDC's search for records. Compl. ¶¶ 18–33.

reasonable detail the scope and method of the agency's search." *Defenders of Wildlife v. U.S. Border Patrol (Defenders II)*, 623 F. Supp. 2d 83, 91 (D.D.C. 2009).  Agency affidavits attesting to a reasonable search "are afforded a presumption of good faith" and "can be rebutted only 'with evidence that the agency's search was not made in good faith.'" *Defenders of Wildlife v. U.S. Dep't of Interior (Defenders I)*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004), quoting *Trans Union LLC v. Fed. Trade Comm'n*, 141 F. Supp. 2d 62, 69 (D.D.C. 2001).[10]  This presumption "withstand[s] purely speculative claims about the existence and discoverability of other documents," *Chamberlain v. DOJ*, 957 F. Supp. 292, 294 (D.D.C. 1997) (internal quotation marks and citations omitted), *aff'd*, 124 F.3d 1309 (D.C. Cir. 1997); *see also Oglesby*, 920 F.2d at 67 n.13 (finding that "hypothetical assertions are insufficient to raise a material question of fact with respect to the adequacy of the agency's search"), and can only be overcome "if a review of the record raises substantial doubt, particularly in view of [plaintiff's] well-defined requests and positive indications of overlooked materials," *Valencia–Lucena*, 180 F.3d at 326 (internal quotation marks and citations omitted).

    1. <u>Defendants did not conduct an adequate search in response to the FOIA request referenced in Count I.</u>

---

10    Although plaintiff contends that CDC withheld non-exempt documents in bad faith, Pl.'s Mem. of P. & A. in Supp. of Pl.'s Opp. to Defs.' Mot. for Summ. J. ("Pl.'s Mem.") [Dkt. # 15] at 1–2, the Court finds that plaintiff's allegations are "too speculative and conclusory . . . to offer a concrete basis" for a finding of bad faith, *Kay v. FCC*, 976 F. Supp. 23, 34 (D.D.C. 1997). Plaintiff relies on an analysis of the unredacted versions of records that he received from a former member of Congress, *see supra* note 4, to allege bad faith on the part of defendants. However, plaintiff's allegations fail to rebut the presumption of good faith accorded an agency's declarations for two reasons.  First, "assertions of bad faith must fail where the plaintiff has acquired documents through other means, such as formal discovery, because these procedures may differ from FOIA disclosure procedures." *Kay*, 976 F. Supp. at 33.  Second, as discussed later in this opinion, the Court finds that the information redacted by CDC fell within the deliberative process privilege and was therefore properly withheld under Exemption 5.  As such, plaintiff's allegations of bad faith are insufficient to overcome the presumption of good faith due defendants' supporting declarations.

Defendants maintain that the Declaration of Carol Maloney establishes that CDC's search was adequate because it was "reasonably calculated to uncover all records in its possession responsive to [p]laintiff's FOIA request." Mem. of P. & A. in Supp. of Defs.' Mot. for Summ. J. ("Defs.' Mem.") at 9. To satisfy its burden of showing that its search was calculated to uncover all relevant documents, an agency must submit a "reasonably detailed" affidavit setting forth the search terms and the type of search performed. *Oglesby*, 920 F.2d at 68. The D.C. Circuit has held that "reasonably detailed" affidavits or declarations must "set[] forth the search terms and the type of search performed, and aver[] that all files likely to contain responsive materials (if such records exist) were searched." *Id.*; *see also Defenders II*, 623 F. Supp. 2d at 92 (finding agencies' declaration deficient when it failed to provide details necessary to determine whether the agencies' searches were adequate, including what kind of files were searched, a description of the agencies' filing methods, and the search terms used to find responsive records).

Thus, while the agency's affidavits or declarations "need not set forth with meticulous documentation the details of an epic search for requested records," they must describe "what records were searched, by whom, and through what process." *Defenders II*, 623 F. Supp. 2d at 91 (internal quotation marks and citations omitted); *see also White v. DOJ*, 840 F. Supp. 2d 83, 89 (D.D.C. 2012) ("Defendant's affidavit explains what system was searched, the terms used, why it was likely to contain responsive documents, and that no other search method would reveal responsive documents. Although the affidavit could in theory be more detailed, that fact alone does not warrant denying summary judgment in favor of [d]efendant."). "Furthermore, the affidavit must explain the scope and method of the agency's search in a *non-conclusory* fashion." *Nat'l Sec. Counselors*, No. 1:11-cv-00442, 2012 WL 1026671, at *3 (D.D.C. Mar. 28, 2012) (emphasis added) (internal quotation marks omitted); *see also Parker v. DOJ*, No. 10-2068, 2012

WL 1038615, at *10 n.1 (D.D.C. March 29, 2012), quoting *Valencia–Lucena*, 180 F.3d at 325 (finding that agency declaration containing only a single conclusory statement supporting the adequacy of its search did "not provide enough detail regarding the scope and method of the agency's search to demonstrate that the search was 'reasonably calculated to uncover all relevant documents.'")

With respect to the search in response to the FOIA request referenced in Count I, the Maloney Declaration states only that Dr. Hooker's request was sent to NIP, NCBDDD, NCEH, and OES for processing because "[t]hese offices were the reasonably likely locations of the records sought by Dr. Hooker and were identified in Dr. Hooker's request," Maloney Decl. ¶ 8, and that "[t]he CDC determined that there were no other likely locations of records responsive to [the] request." *Id.* ¶ 9.  The declaration also provided that "[p]rogram staff in each of the offices searched for the records sought by Dr. Hooker.  The NIP did not find any responsive records." *Id.* ¶ 10.

This description of the search is too cursory to persuade the Court that the search was adequate.  Although the declaration identifies the offices to which the request was forwarded, it fails to explain either why those offices were the reasonably likely locations of the records sought or describe with specificity the search methodology used, including what records were searched, by whom, and using what process or search terms.  Based on the record before it, the Court finds that defendants have not met their burden of showing that their search was adequate. *See Strunk v. U.S. Dep't of State*, 770 F. Supp. 2d 10, 17 (D.D.C. 2011) (finding that "cursory description" of agency's search that identified the reasonably likely location of responsive records without additional detail "provide[d] no basis from which the [c]ourt [could] determine whether the search was adequate under the circumstances"); *McKinley*, 756 F. Supp. 2d at 112–

13 (finding that agency had not provided sufficient information from which court could conclude that it had conducted an adequate search when the declaration failed to explain "why [the office searched] was believed to be the office most likely to have responsive records; the search methods used; descriptions of searches performed; or the names of agency personnel who conducted the searches.") (internal citation omitted).

The Court directs defendants to amend or supplement their declarations with additional detail – including a description of the search methods employed by CDC, the names and roles of the individuals who performed the searches, and a list of the search terms used – so that the Court can determine whether defendants have met their obligations under FOIA. [11]

---

[11]    Plaintiff also alleges that defendants' search for the records in Count I (FOIA Request No. 05-499) was inadequate in light of CDC's response to a separate FOIA request filed by Jeffrey A. Trelka on February 27, 2005.  Pl.'s Opp. at 15; Ex. 1A to Pl.'s Opp. at 2.  Trelka's request was for records associated with the same two Danish thimerosal studies that were the subject of plaintiff's initial FOIA request.  Pl.'s Opp. at 14–15.  On January 9, 2006, CDC released a total of 293 pages from NIP to Trelka in response to his request.  *Id.* at 15; Ex. 1A to Pl.'s Opp. at 2.  Yet, CDC failed to find *any* records responsive to plaintiff's similar request after its search of NIP in 2005.  Maloney Decl. ¶ 13.  Plaintiff contends that this discrepancy demonstrates that defendants failed to conduct an adequate search in response to his request.  *See* Pl.'s Opp. at 15.

Defendants explain the discrepancy by pointing to the difference in scope between the two requests.  *See* Defs.' Reply at 6–7.  They state:  "in addition to seeking information regarding thimerosal in Denmark, Mr. Trelka also sought 'all email correspondences between CDC NIP researchers and officials and Dr. Harald Heijbel and Peet Tull regarding thimerosal exposure levels in childhood vaccinations in Sweden.'"  *Id.* at 6, quoting FOIA Request from Jeffrey Trelka, Feb. 27, 2005, Ex. to Defs.' Reply [Dkt. # 21-2].  Defendants argue that "[t]he release of documents falling within the much broader scope of Mr. Trelka's requests has no bearing on the propriety of the search for records responsive to Dr. Hooker's significantly narrower request."  Defs.' Reply at 6–7.[11]

On this point, the Court agrees with defendants.  Though an agency "has a duty to construe a FOIA request liberally," *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995), there is no requirement that the agency must interpret a request more broadly "than the description reasonably contained in the request[]," *McKinley v. FDIC*, 807 F. Supp. 2d 1, 7 (D.D.C. 2011).  Defendants were not obligated to expand the scope of plaintiff's request for correspondence regarding the Danish thimerosal studies to include correspondence regarding the Swedish thimerosal studies, and their failure to do so has no bearing on the adequacy of their search for the records requested by plaintiff.

2.   *Defendants conducted an adequate search with respect to the FOIA request referenced in Count IV.*

Regarding Count IV (FOIA Request No. 05-222), plaintiff alleges that defendants' search was inadequate "given . . . that email replies by Dr. [Robert] Chen were not obtained." Compl. ¶ 37.  While processing plaintiff's request, CDC discovered that Dr. Chen had received emails responsive to plaintiff's request but had not retained his replies to those emails.  Maloney Decl. ¶ 57.  In response, plaintiff submits that "it is curious that these replies would not be obtained by some type of archival system as typically, emails are not stored directly on an individual's hard drive, but are instead maintained on a central server."  Pl.'s Opp. at 6.  Further, plaintiff questions defendants' choice to have Dr. Chen perform a search of his own emails, claiming that "CDC's excuse that he erased his replies is dubious at best," and requests that "a forensic inspection . . . be performed on all his hard drives, past and present."  *Id.* at 7.

Defendants submitted a declaration from Katherine S. Norris, FOIA Officer for CDC and the Agency for Toxic Substances and Disease Registry ("ATSDR"), attesting to the accuracy of defendants' claims with respect to CDC's email storage and archival systems.  Norris Decl. ¶ 1 [Dkt. # 21-1].  The Norris Declaration indicates that "CDC emails are stored on an individual's computer only if an individual retains the email in his or her account on the Corporate Exchange Server or the individual manually archives the email in a PST [personal folders] file."  Defs.' Reply at 8; Norris Decl. ¶ 5.  "Otherwise, CDC archives emails for a period of two weeks[,]" after which "the media used for backup is re-used and all previous content is permanently deleted and cannot be recovered."  Norris Decl. ¶ 5.  As such, "[i]f Dr. Chen had not retained

---

Finally, plaintiff contends that documents released to Mr. Trelka were completely redacted and that they "should be released in their entirety."  Pl.'s Opp. at 14.  But Mr. Trelka's request is not an issue in this litigation, and plaintiff does not have standing to bring litigation based on Mr. Trelka's request.  *See Feinman v. FBI*, 680 F. Supp. 2d 169, 176 (D.D.C. 2010).

responsive emails, his emails would not have been saved by the CDC after the two week period."
*Id.*  In light of the fact that defendants' email archive system would have already deleted Dr.
Chen's emails, defendants claim that "it was reasonable for CDC to have Dr. Chen search his
own emails."  Defs.' Reply at 8.

The Court finds that the agency's search for Dr. Chen's email responses was adequate.
Plaintiff expresses doubt in response to the results of CDC's search, but the declarations show
that defendants have made repeated efforts to address plaintiff's concerns.  After plaintiff filed
the administrative appeal, CDC asked Dr. Chen to conduct an additional search of his emails and
"confirmed that [he] had not retained his replies."  Maloney Decl. ¶¶ 58–59.  Dr. Chen was asked
to conduct a third search of his emails six years later in response to a separate FOIA request by
Dr. Hooker and was still unable to locate any additional responsive emails.  Defs.' Reply at 9.

FOIA does not require a perfect search, only a reasonable one.  *Meeropol v. Meese*, 790
F.2d 942, 956 (D.C. Cir. 1986).  "[A] search is not unreasonable simply because it fails to
produce all relevant material[.]"  *Id.* at 952–53.  "Rather, the adequacy of a FOIA search is
generally determined not by the fruits of the search, but by the appropriateness of the methods
used to carry out the search."  *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d
504, 514–15 (D.C. Cir. 2011) (rejecting plaintiff's claim that search was inadequate when it
"turned up only a few emails" but requesting that agency address the existence of archived
emails and backup tapes in supplemental declarations).  Here, defendants' affidavits adequately
explain why no emails were located from Dr. Chen.  Plaintiff's challenge that more emails
should be available is based only on speculation.  By conducting multiple searches for emails
responsive to plaintiff's request and submitting a declaration addressing the existence of an email
archival system or central server, Maloney Decl. ¶¶ 54, 56, 59; Norris Decl. ¶ 5, defendants have

demonstrated that their search was reasonably calculated to uncover all relevant documents.  The Court thus finds that their search was adequate.

**B.  Whether Defendants Properly Asserted Exemptions under FOIA**

1.  Defendants properly withheld or redacted documents under Exemption 5.

FOIA Exemption 5 bars disclosure of "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  A document properly withheld under Exemption 5 "must satisfy two conditions:  its source must be a [g]overnment agency, and it "must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it."  *U.S. Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).  Regardless of the privilege claimed by the defendant-agency, the threshold requirement under Exemption 5 is that the records in question qualify as inter-agency or intra-agency memoranda.  5 U.S.C. § 552(b)(5).

*a.  The withheld records qualify as intra-agency memoranda.*

Plaintiff argues that documents exchanged between CDC and the Danish outside researchers (Count I) and between CDC and Dr. Thomas Verstraeten, a former CDC employee and co-author of several CDC manuscripts (Counts II and III), do not qualify as intra-agency memoranda because neither the researchers nor Dr. Verstraeten were acting as "outside consultants" to CDC.  Pl.'s Opp. at 16–17, 22.  As defendants' Exemption 5 withholdings or redactions under Count I are no longer at issue,[12] the Court will address only plaintiff's challenge to the withholding of documents exchanged between CDC and Dr. Verstraeten.

_____

12     CDC withheld records responsive to the FOIA requests referenced in Counts I, II, and III under Exemption 5.  *See* Defs.' SMF ¶¶ 13, 27; *Vaughn* index at 1–36.  However, during this litigation, defendants made a supplemental release to plaintiff of documents responsive to

Dr. Verstraeten was a co-author of the manuscript "Safety of Thimerosal-Containing Vaccines: A Two-Phased Study of Computerized Health Maintenance Organization Databases," which was published in *Pediatrics* in 2003.   Maloney Decl. ¶ 46; Ex. B to Maloney Decl. According to CDC, Dr. Verstraeten "began working on this, and other, manuscripts that are the subject of the withheld or redacted emails[]" while still a CDC employee, and he "continued to work on the manuscripts he co-authored after leaving CDC."  Maloney Decl. ¶ 46.  But plaintiff points to a letter written by Dr. Verstraeten in which he submits:  "Although I was involved in some of the discussions concerning additional analyses that were undertaken after my departure from the CDC, I did not perform any of these additional analyses myself, nor did I instigate them."  Thomas Verstraeten, Letter to the Editor: *Thimerosal, the Centers for Disease Control and Prevention, and GlaxoSmithKline* ("Verstraeten Letter"), Pediatrics, Apr. 1, 2004 at 932, Ex. 2A to Pl.'s Opp. [Dkt. # 15-5] at 2.  From this statement, plaintiff concludes that Dr. Verstraeten was not sufficiently involved in CDC's research to qualify as a "consultant" and therefore his communications with CDC were not intra-agency memoranda.  Pl.'s Opp. at 22.

Plaintiff's contention is not supported by case law.  The Supreme Court has held that, in some circumstances, a record exchanged between an agency and an outside party can constitute "intra-agency memoranda" under Exemption 5 in certain circumstances.  *Klamath*, 532 U.S. at

plaintiff's Count I FOIA request that were previously withheld under Exemption 5, including Document Nos. 1, 2, 4, 5, 6, 7, 9, and 12.  Defs.' Reply at 23.  Plaintiff's case is now moot as to the Exemption 5 withholdings in these records.  *See supra* note 4.

As such, plaintiff's challenges to Exemption 5 withholdings under Count I are no longer at issue and the Court will focus its analysis of Exemption 5 withholdings on records responsive to Counts II and III.   Defendants did not rely on Exemption 5 in its withholding of documents responsive to Count IV.  Defendants continue to withhold portions of Document Nos. 1 and 12 pursuant to Exemption 6.  Defs.' Reply at 23.  Document Nos. 10 and 11 are the only records under Count I that have not been released to plaintiff; both documents contain only Exemption 6 redactions.  *Vaughn* index at 2–3.

9–12.  Contrary to plaintiff's contention, the relevant inquiry is not whether the agency exercises employer-like control over the outside party or whether the party was directly involved in all aspects of the agency's decision-making process.  Instead, the *Klamath* Court held that the dispositive question is whether the records submitted by the outside party "played essentially the same part in an agency's process of deliberation as documents prepared by agency personnel might have done."  *Id.* at 10.  The Court found that an independent professional "not assumed to be subject to the degree of control that agency employment [would] entail[]" could be considered a consultant for purposes of Exemption 5 if in its communications with the agency, that person did not "represent an interest of its own, or the interest of any other client" and if "its only obligations [were] to truth and its sense of what good judgment calls for."  *Klamath*, 532 U.S. at 10; *see also Ctr. for Int'l Environ. Law v. Office of U.S. Trade Representative*, 237 F. Supp. 2d 17, 27 (D.D.C. 2002) ("The critical factor in deciding the inter-agency status of an outside party is the degree of self-interest pursued by that party, as compared to its interest in providing neutral advice or consultation to the agency.").

Here, in the same letter from which plaintiff quotes, Dr. Verstraeten attests to his involvement with CDC's thimerosal research while still a CDC employee, asserting that he "was responsible for nearly all aspects of this study, including study design, data gathering, data analysis, and writing of the article."  Verstraeten Letter at 2.  Although Dr. Verstraeten may not have directly conducted or instigated additional analyses after leaving CDC, the letter demonstrates that he played the same role in the agency's process of deliberation after his departure that he would have played had he remained:  reviewing, revising, and finalizing the draft.  Indeed, he was named as a CDC employee on a manuscript finalized and published after he left CDC.  *See* Maloney Decl. ¶ 46.  As defendant argues, the letter plaintiff has brought to the

Court's attention reflects that Dr. Verstraeten "continued to work with his colleagues at CDC to finalize his work on [CDC studies] and that this involvement was kept separate from his work for his new employer."  Defs.' Reply at 11; Verstraeten Letter at 2.

The fact that Dr. Verstraeten may have had a new employer is not dispositive; the D.C. Circuit has ruled that "records of communications between an agency and outside consultants qualify as 'intra-agency' for purposes of Exemption 5 if they have been 'created for the purpose of aiding the *agency's* deliberative process.'"  *Pub. Citizen, Inc. v. DOJ*, 111 F.3d 168, 170 (D.C. Cir. 1997), quoting *Dow Jones & Co. v. DOJ*, 917 F.2d 571, 575 (D.C. Cir. 1990).  The Court's review of the records supports Dr. Verstraeten's claim that he was not promoting his personal interests or those of his private employer, but that he was working to ensure "the scientific and public health merit" of the published studies in which he was involved.  Verstraeten Letter at 2. Thus, the Court finds that correspondence between CDC and Dr. Verstraeten qualifies as intra-agency memoranda and meets the threshold requirement of Exemption 5.

> b. *The withheld records qualify as predecisional and deliberative.*

If the threshold requirement is met, the agency bears the burden of showing through its declarations and *Vaughn* index that the information withheld falls under one of three privileges: (1) the attorney-client privilege; (2) the attorney work-product privilege; or (3) the executive deliberative process privilege.  *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980).  Here, defendants claim that the documents withheld under Exemption 5 fall within the deliberative process privilege.  Defs.' Mem. at 10–11.[13]

---

13    Defendants assert the deliberative process privilege over all documents withheld or redacted pursuant to Exemption 5; though several documents originally withheld pursuant to Exemption 5 were subsequently released to plaintiff during this litigation, *see supra* note 10, the

"The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery," and its purpose "is to enhance 'the quality of agency decisions' by protecting open and frank discussion among those who make them within the Government."  *Klamath*, 532 U.S. at 8–9 (internal quotation marks and citations omitted).  "[T]he agency has the burden of establishing what deliberative process is involved, and the role played by the documents [at] issue in the course of that process."  *Coastal States*, 617 F.2d at 868.  Moreover, the deliberative process privilege only "protects agency documents that are both predecisional and deliberative."  *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006).  Based on the agency declarations and its *in camera* review of the documents withheld or redacted under Exemption 5, the Court is satisfied that the records at issue were both predecisional and deliberative.

A document is predecisional if it was "generated before the adoption of an agency policy . . . [and] would inaccurately reflect or prematurely disclose the views of the agency, suggesting as agency position that which is as yet only a personal position."  *Coastal States*, 617 F.2d at 866.  A document can be characterized as predecisional if it "is recommendatory in nature or is a draft of what will become a final document."  *Id.*  And it is deliberative if it "reflects the give-and-take of the consultative process."  *Id.*  "[R]ecommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency[]" all qualify as deliberative.  *Id.*  In sum, factual material must be disclosed but advice and recommendations may be withheld."  *Wolfe v. U.S. Dep't of Health and Human Servs.*, 839 F.2d 768, 774 (D.C. Cir. 1988) (citations omitted).

---

following Exemption 5 withholdings are still at issue:  Document Nos. 15–16, 18–25, 27–29, 38, 46, 50–56, 58–64, 66, 68, 70, 74–75, 79–80, 87, 91–92, 94, 96–121.  *See Vaughn* index.

Although agencies do not have to go as far as "identify[ing] a specific decision corresponding to each communication" in order to demonstrate the predecisional and deliberative nature of withheld records, "protection under Exemption 5 [requires at the least that] the document was generated as part of a definable decision-making process." *Gold Anti-Trust Action Comm., Inc. v. Board of Governors of Fed. Reserve Sys.*, 762 F. Supp. 2d 123, 135–36 (D.D.C. 2011).

Plaintiff advances two challenges to the assertion of the deliberative process privilege here. He argues that (1) the withheld or redacted documents contained subsequent justifications of the decision made by the agency in 1999 to support the use of thimerosal-containing vaccines, and therefore were not predecisional, Pl.'s Opp. at 3; and (2) the records that were withheld or redacted contained factual as opposed to deliberative material, in particular, the fact that certain manuscripts were not accepted for publication in specific journals, *id.* at 4–5.

With respect to plaintiff's first challenge, the Court finds that the withheld or redacted documents were predecisional materials generated as part of a definable decision-making process. The Court agrees that the relevant agency decision for purposes of applying the deliberative process privilege to these particular records is not whether the agency should support the use of thimerosal-containing vaccines, but "whether [the authors should] make changes to a manuscript prior to publication, and whether and how to seek publication of a manuscript." Defs.' Reply at 12.

Plaintiff's FOIA requests sought "all written correspondence . . . regarding the [2004] publication" of "Thimerosal-Containing Vaccines and Autism Spectrum Disorder: A Critical Review of Published Original Data" in *Pediatrics*, limiting his search to "correspondences . . . between 1/1/2002 and the present." FOIA Request from Brian Hooker, Apr. 20, 2005, Ex. P to

Maloney Decl.   The D.C. Circuit has found that where a plaintiff requests records of correspondence surrounding or leading up to an agency publication, the relevant agency decision for purposes of applying the deliberative process privilege is the decision to publish.   *See Formaldehyde Inst. v. Dep't of Health and Human Servs*, 889 F.2d 1118, 1120 (D.C. Cir. 1989), *overruled on other grounds*, *Nat'l Inst. of Military Justice v. Dep't of Defense*, No. 06-5242, 2008 WL 1990366, at *1–2 (D.C. Cir. Apr. 30, 2008) (finding that relevant agency decision was the determination to publish a report where plaintiff's FOIA request sought "copies of all agency records of contact . . . related to 'publication or rejection' of the [r]eport"); *United Am. Fin., Inc. v. Potter*, 531 F. Supp. 2d 29, 44 (D.D.C. 2008) (finding that relevant agency decision was agency's publication of an article where plaintiff's FOIA request sought all supporting documents and drafts of documents relating to that article); *Nat'l Air Traffic Controllers Ass'n v. FAA*, No. 06-53, 2007 WL 495798, at *4 (D.D.C. Feb. 12, 2007) (finding that relevant agency decision was publication of agency assessment overview where plaintiff's FOIA request sought information surrounding the overview's publication).   Having chosen to focus his FOIA inquiry on correspondence surrounding the agency's 2003 publication of the thimerosal manuscript, plaintiff cannot now point to an earlier agency decision in an attempt to argue that the withheld documents were actually post-decisional.[14]

With respect to plaintiff's second challenge, the Court finds that CDC properly applied Exemption 5 to material that is deliberative in nature.   In their *Vaughn* index, defendants described the documents withheld or redacted under the deliberative process privilege as follows:

---

14      The Court finds that certain documents created after publication of the manuscript were also properly withheld under the privilege.   These documents discussed proposed responses to comments submitted by reviewers after publication of the thimerosal manuscript and were thus predecisional to those responses.   *Id.*

- "This document is a draft manuscript.   A draft is the author's recommendation of what the final document should say."  *Vaughn* index at 30, 34 (referencing Doc. Nos. 97, 114).

- "The [document/redacted information] [is/contains] an internal HHS communication discussing [the analysis underlying a draft manuscript/a pending study/the review of a draft manuscript/reviewer comments on a draft manuscript/the potential publication of a draft manuscript/possible assistance from another researcher/a response to a letter to the editor/a response to the original email/proposed edits to a draft manuscript/a possible erratum to accompany a manuscript/etc.]."  *Vaughn* index at 4, 5–10, 12, 14–24, 26, 28–36 (referencing Doc. Nos. 15–16, 18–24, 27–29, 38, 46, 50–56, 58–64, 66, 68, 70, 74–75, 79–80, 87, 91–92, 94, 96, 98–113, 115–121).

- "The document [also] consists of reviewer comments, which are used by HHS to make edits to draft manuscripts and evaluate whether to seek publication of a manuscript."  *Vaughn* index at 8, 19 (referencing Doc. Nos. 25, 63).

The Court's *in camera* review of the records at issue confirms these descriptions and supports their withholding under the deliberative process privilege, which was designed to protect documents "reflecting advisory opinions, recommendations, and deliberations comprising [an agency's decision-making] process."  *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 150 (1975) (internal quotation marks and citations omitted).

Plaintiff argues in his opposition that CDC improperly applied Exemption 5 to what he believes may be factual material.  Pl.'s Opp. at 4–5.  While the document here included some discussion of factual matters, such as test results and which tests should be run again, they involve deliberation and discussion about the data, not mere summaries.  In any event, the D.C. Circuit has cautioned against overuse of the factual/deliberative distinction, *see Dudman Commc'ns Corp. v. U.S. Dep't of Air Force*, 815 F.2d 1565, 1568 (D.C. Cir. 1987), and has held that "[i]n some circumstances . . . the disclosure of even purely factual material may so expose the deliberative process within an agency that it must be deemed exempted," *Mead Data Cent.,*

*Inc. v. Dep't of Air Force,* 566 F.2d 242, 256 (D.C. Cir. 1977); *see also Montrose Chem. Corp. v. Train,* 491 F.2d 63, 71 (D.C. Cir. 1974) ("[I]n some cases selection of facts or summaries may reflect a deliberative process which exemption 5 was intended to shelter.").

The Court's *in camera* review of the records at issue confirms that application of Exemption 5 was not improper.  In *Pies v. IRS*, 668 F.2d 1350 (D.C. Cir. 1981), the D.C. Circuit held that records protected under Exemption 5 are those that "if released, may actually mislead the public as to the policy of the agency," *id*. at 1353–54 (finding that disclosure of draft regulations that were "never finalized nor approved to reflect agency policy[]" would be "of little or no assistance to members of the public[]" and were thus properly withheld).  Further, the Court found that "there is little public interest in the disclosure of reasons supporting a policy which an agency has rejected, or . . . reasons which might have supplied, but did not supply, the basis for a policy which was actually adopted on a different ground." *Id.* at 1353 (internal quotation marks omitted), citing *Sears*, 421 U.S. at 152.

Here, the draft manuscript referenced by plaintiff – though initially rejected for publication in certain journals – was never finalized or approved as a reflection of agency policy in its draft form, though a subsequent revision of the manuscript was accepted for publication in *Pediatrics*.  *See* Pl.'s Opp. at 1–3.  The Court finds that the withheld documents can best be described as an ongoing, collaborative dialogue about the manuscript.  *See Dudman*, 815 F.2d at 1569.  "The choice of what factual material . . . to include or remove during the drafting process is itself often part of the deliberative process, and thus is properly exempt under Exemption 5." *ViroPharma Inc. v. Dep't of Health and Human Servs.*, 839 F. Supp. 2d 184, 193 (D.D.C. 2012); *see also Goodrich Corp. v. EPA*, 593 F. Supp. 2d 184, 189 (D.D.C. 2009) ("[T]he selection and calibration of data is part of the deliberative process to which Exemption 5 applies.").  The Court

finds that revealing the internal CDC discussions and the recommendations of CDC employees and consultants about which research findings and data to include would undermine the purposes to be served by the exemption.  Therefore, the Court finds that the records at issue were properly withheld under Exemption 5.

2.   <u>Defendants properly withheld or redacted documents under Exemption 6</u>.

FOIA Exemption 6 bars disclosure of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).[15]   A determination of proper withholding under Exemption 6 requires "weigh[ing] the privacy interest in non-disclosure against the public interest in the release of records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy."  *Lepelletier v. FDIC,* 164 F.3d 37, 46 (D.C. Cir. 1999) (internal quotation marks omitted).  Moreover, the agency has a duty to engage in this balancing test before deciding whether to disclose or withhold each record.  *Judicial Watch v. U.S. Dep't of Homeland Sec.*, 598 F. Supp. 2d 93, 96 (D.D.C. 2009) ("[A]n agency must, for each record, conduct a particularized assessment of the public and private interest at stake.").

The information withheld or redacted by defendants under Exemption 6 includes "contact information for CDC employees and a former CDC employee, and third parties whose personal information was reflected in the responsive documents" as well as "certain personal discussions . . . includ[ing] topics such as an individual's personal life or travel plans."  Defs.' Mem. at 17; Maloney Decl. ¶¶ 25, 48.  Plaintiff does not challenge the redaction of contact information and admits generally to "not [being] particularly concerned with Exemption 6 redactions as they appear to be for the most part in regard to email addresses, phone numbers,

---

15   The parties do not contest that the documents at issue in this case meet the "similar files" requirement of Exemption 6.

etc." Pl.'s Mem. at 5. As such, the Court will treat the majority of Exemption 6 redactions as conceded. *See* Defs.' Reply at 16; *Fischer v. DOJ*, 723 F. Supp. 2d 104, 110 (D.D.C. 2010) (holding that it is proper for the court to treat as conceded exemptions which plaintiff does not address in its opposition).

Plaintiff does challenge the personal information redacted from one document: Document 12 (FOIA Request No. 05-499), which defendants identify as "a comment about [Danish researcher] Poul Thorsen's personal life." Pl.'s Opp. at 19–20; *Vaughn* index at 3. On April 13, 2011, Poul Thorsen was criminally indicted by a federal grand jury on charges of wire fraud and money laundering. Crim. Indict. of Poul Thorsen ¶¶ 1, 14 ("Thorsen Indict."), Ex. 9A to Pl.'s Opp. [Dkt. # 15-26]. Plaintiff argues that "[g]iven the current [f]ederal, criminal charges that Dr. Thorsen faces [for fraudulently obtaining over $1 million in CDC grant money], there is strong public interest in his personal life, especially that being disclosed to CDC employees." Pl.'s Opp. at 19–20; Thorsen Indict. ¶ 11. Plaintiff buttresses this argument with a claim that the criminal indictment "casts significant doubt over the veracity of [Dr. Thorsen's] work," including a paper co-authored by Thorsen regarding the connection between thimerosal-containing vaccines and autism. *Id.* at 20.

The first step in the Exemption 6 balancing test is to determine whether there is an individual privacy interest in the material withheld and whether that interest is substantial, as opposed to *de minimis*. *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989).[16] This privacy interest usually reflects the "primary purpose [of] Exemption 6[,]

---

16      Though the Supreme Court in *DOJ v. Reporters Comm. for Freedom of Press,* 489 U.S. 749, 773 (1989), examined the privacy interest versus public interest balancing test under Exemption 7(c) rather than Exemption 6, the D.C. Circuit "has deemed the privacy inquiry of Exemptions 6 and 7(c) to be essentially the same," *Judicial Watch, Inc. v. DOJ*, 365 F.3d 1108, 1125 (D.C. Cir. 2004).

[which] is to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *U.S. Dep't of State v. Wash. Post. Co.*, 456 U.S. 595, 599 (1982); *see also U.S. Dep't of State v. Ray*, 502 U.S. 164, 176 (1991) (finding that linking "personal information regarding marital and employment status, children, [and] living conditions" to "particular, named individuals" could subject them and their families to "embarrassment in their social and community relationships" and constitute a significant invasion of their privacy). The D.C. Circuit has recognized a broad concept of personal privacy. *See, e.g., Horowitz v. Peace Corps*, 428 F.3d 271, 279 (D.C. Cir. 2005) (noting that even innocuous information may qualify for Exemption 6 protection).

The second step in an Exemption 6 analysis is to weigh the public interest in disclosure against the legitimate privacy interest that the court has found. *Horner*, 879 F.2d at 874. The Supreme Court has held that "[t]he only relevant public interest in the FOIA balancing analysis is the extent to which disclosure of the information sought would she[d] light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *U.S. Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 497 (1994); *see also Schwaner v. Dep't of Air Force*, 898 F.2d 793, 800 (D.C. Cir. 1990) ("[T]he question is whether the information sought would improve the public's understanding of the way in which government operates.").

Dr. Thorsen presumptively retains a privacy interest in a comment regarding his personal life. However, the Court cannot determine from defendants' declarations and *Vaughn* index whether the privacy interest involved in Document 12 is substantial or *de minimis*. Although the Court was able to examine the majority of defendants' Exemption 6 redactions as a result of its *in camera* review of the 315 pages withheld pursuant to Exemption 5, records responsive to the

FOIA request referenced in Count I – including Document 12 – were not submitted to the Court because the Court did not request to see them.  With respect to Counts II and III, the Court found that the description of the Exemption 6 withholdings in the Maloney Declaration accurately matched the content of the withheld records and included "email address, and other contact information, of individuals and other personal information, including discussions of health issues, travel plans, and family issues."  Maloney Decl. ¶ 48.  While this gives the Court some confidence that the defendants' redaction of Document 12 was proper, defendants have not "describe[d] the document[] and the justification[] for nondisclosure with reasonably specific detail" to justify their exemption.  *Military Audit Project,* 656 F.2d at 738.  By merely asserting in conclusory terms that "[d]isclosure of [this] information would constitute an invasion of privacy of [Dr. Thorsen]," *Vaughn* index at 3, defendants have failed to articulate a substantial privacy interest in the withheld comment with sufficient specificity.

However, even if Dr. Thorsen's privacy interest is found to be substantial, plaintiff has not articulated any significant public interest in the disclosure of a comment about Dr. Thorsen's personal life.  The Supreme Court has held that the "purpose [of FOIA] . . . is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct."  *Reporters Comm. for Freedom of the Press*, 489 U.S. at 773 (holding that disclosure of the contents of an individual's rap sheet "would not shed any light on the conduct of any [g]overnment agency or official").  Instead, "the Act was designed to create a broad right of access to 'official information.'"  *Id.* at 772, quoting *EPA v. Mink,* 410 U.S. 73, 80 (1973).

The Court finds that the disclosure of a comment relating to Dr. Thorsen's personal life would not improve the public's understanding of how the government operates.  There is no

indication that CDC, the alleged victim, was complicit in the charged scheme to defraud the agency of over $1 million of research grant funds.  Thorsen Indict. ¶ 11.  So, the mere fact that Dr. Thorsen has been indicted does not transform his personal information into information about what the government "is up to," *Lepelletier*, 164 F.3d at 46, and it was properly redacted.[17]

        3.    <u>Defendants properly withheld or redacted documents under the protections of the Copyright Act</u>.

Plaintiff does not challenge the withholdings or redactions of four articles (Doc. Nos. 13, 40, 76–77) under the protections of the Copyright Act of 1976, 17 U.S.C. § 106, *et seq.* (2006), so the Court considers this count to be conceded.  *See, e.g., Fischer*, 723 F. Supp. 2d at 110 (treating the defendant's arguments as conceded under several FOIA exemptions because the plaintiff did not address the arguments in its opposition). [18]

---

17    In their reply to plaintiff's opposition, defendants cite to case law discussing the public interest in exposing the identity of a government employee accused of or tangentially associated with alleged misconduct.  Defs.' Reply at 18.  However, plaintiff's claimed 'public interest' in this case is not in release of Dr. Thorsen's identity but in the content of a statement about his personal life.  As such, the Court does not find defendants' analysis applicable to disclosure of a comment that has not been shown by either party to concern Dr. Thorsen's misconduct.

18    Case law analyzing the interaction between the Copyright Act and FOIA exemptions is sparse, but the two applicable cases support defendants' contention that the only appropriate approach for protecting copyrighted documents under FOIA is through the application of Exemption 4.  Defs.' Mem. at 18 ("Agencies can use Exemption 4 . . . to protect information protected by the Copyright Act."); *see Weisberg v. DOJ (Weisberg IV)*, 631 F.2d 824, 826 (D.C. Cir. 1980) ("[T]he Copyright Act is not a statute exempting disclosure for the purposes of Exemption 3."); *St. Paul's Benevolent Educ. & Missionary Justice Inst. v. United States*, 506 F. Supp. 822, 830 (N.D. Ga. 1980) ("FOIA does not provide any specific exemption for copyrighted materials, nor does the [C]opyright [A]ct meet the exemption standards under 5 U.S.C. § 552(b)(3) . . . . The remaining exemption possibly applicable is (b)(4).").  Exemption 4 protects "trade secrets and commercial or financial information obtained from a person and privileged or confidential."  5 U.S.C. § 552(b)(4).

The *Weisberg* opinion explains in detail why the Copyright Act does not satisfy the requirements for Exemption 3 applicability.  *Weisberg IV*, 631 F.2d at 827 n.14.  "An Exemption 3 statute must either (A) require[] that the matters [specifically exempted from disclosure] be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establish[] particular criteria for withholding or refer[ ] to particular types of matters to be

4. <u>Defendants failed to disclose all reasonably segregable portions of the documents at issue</u>.

"Before approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007). If a record contains information that is exempt from disclosure, any reasonably segregable information in the record must be released after deleting the exempt portions, 5 U.S.C. § 552(b), unless the non-exempt portions are "inextricably intertwined with exempt portions," *Wilderness Soc'y v. U.S. Dep't of Interior*, 344 F. Supp. 2d 1, 18 (D.D.C. 2004). Further, the agency bears the burden of showing that a document is non-segregable. *See Army Times Publ'g Co. v. Dep't of Air Force*, 998 F.2d 1067, 1071 (D.C. Cir. 1993).

An agency may meet this burden by providing a detailed *Vaughn* index of each disclosure and affidavits describing segregability. *See Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002). "The adequacy of the Vaughn Index . . . turns on whether the agency has sufficiently explained why there [are] no reasonable means of segregating factual material from the claimed privileged material." *Wilderness Soc'y*, 344 F. Supp. 2d at 18.

---

withheld." *Id.* (alterations in original), quoting 5 U.S.C. § 552(b)(3) (internal quotation marks omitted). However, "the Copyright Act does not satisfy either of these requirements because it has traditionally been subject to the equitable doctrine of 'fair use' [which permits the reproduction of copyrighted materials "for purposes such as criticism, comments, news reporting, teaching . . . scholarship, or research," 17 U.S.C. § 107,] and in 1976 the Law was amended to formally incorporate the doctrine." 5 U.S.C. § 552(b)(3). As such, the Act does not satisfy the requirement of "explicit nondisclosure" and cannot operate as an Exemption 3 statute. *See Irons & Sears v. Dann*, 606 F.2d 1215, 1220 (D.C. Cir. 1979) ("Congress did not want [Exemption 3] to be triggered by every statute that in any way gives administrators discretion to withhold documents from the public . . . . [O]nly explicit nondisclosure statutes that evidence a congressional determination that certain materials ought to be kept in confidence will be sufficient to qualify under the exemption.").

As a result of its *in camera* review, the Court is satisfied that defendants complied with their duty to segregate exempt from non-exempt information in the records withheld or redacted under Exemption 5.   However, the Court finds that defendants have not met their burden of demonstrating that documents withheld or redacted under Exemption 6 are non-segregable.

While examining the records withheld or redacted pursuant to Exemption 5 *in camera*, the Court noted that several of the portions of these documents redacted pursuant to Exemption 6 contained non-exempt information, *i.e.*, non-personal information that would not appear to implicate any privacy interest.   For example, the portions of Document 91 of the *Vaughn* index withheld pursuant to Exemption 6 are described in the index as "contact information, comments about personal life, and comments about an upcoming election."   *Vaughn* index at 28.   However, several sentences included in this redacted portion do not fall into any of those three categories of personal information.   Because the Court finds that defendants failed to adequately disclose segregable material, the Court concludes that defendants' redactions and withholdings under Exemption 6 were excessive.   Defendants are ordered to:   (1) conduct an additional review of records withheld under Exemption 6; (2) produce all segregable non-exempt information; and (3) submit a supplemental declaration adequately demonstrating that they have complied with their duty to segregate exempt from non-exempt information.

## CONCLUSION

For all of the reasons set forth above, the Court will grant in part and deny in part defendants' motion for summary judgment [Dkt. # 11].   Specifically, the Court rules as follows:

- With respect to Count I, the Court cannot conclude as a matter of law that defendants conducted an adequate search in response to plaintiff's FOIA request.   However, the Court finds that the comment about Dr. Poul Thorsen's personal life was properly redacted pursuant to Exemption 6.   The Court also finds that defendants did not meet their burden of reasonably segregating

32

non-exempt information for disclosure.  Accordingly, the Court will grant in part and deny in part defendants' motion for summary judgment with respect to that count and will instruct defendants to amend or supplement their declarations with additional detail demonstrating the adequacy of their search.

- With respect to Counts II and III, the Court finds as a result of its *in camera* review that the records at issue were properly withheld or redacted pursuant to Exemption 5.  However, for those documents withheld under Exemption 6, the Court also finds that defendants did not meet their burden of reasonably segregating non-exempt information for disclosure.  Accordingly, the Court will grant in part and deny in part defendants' motion for summary judgment with respect to these counts.

- With respect to Count IV, the Court concludes that defendants conducted an adequate search in response to plaintiff's FOIA request.  However, the Court finds that defendants did not meet their burden of reasonably segregating non-exempt information for disclosure.  Accordingly, the Court will grant in part and deny in part defendants' motion for summary judgment with respect to these counts.

- So that the Court can make a ruling on the issue of segregability, defendants are ordered to:  (1) conduct an additional review of records withheld under Exemption 6; (2) produce all segregable non-exempt information; and (3) submit a supplemental declaration demonstrating that they have complied with their duty to segregate exempt from non-exempt information by September 21, 2012.  The Court will deny the motion for summary judgment with respect to those counts without prejudice to renewal.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  August 21, 2012