UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| BRIAN S. HOOKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 11-1276 (ABJ) |
| | ) | |
| U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*, | ) ) | |
| | ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION**

On July 14, 2011, plaintiff Brian S. Hooker brought an action against defendants Kathleen Sebelius, Secretary of the U.S. Department of Health and Human Services ("HHS"), and Thomas R. Frieden, Director of the Centers for Disease Control and Prevention ("CDC"), under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2006). Compl. [Dkt. # 1] ¶¶ 1, 4–5.[1]  He challenged the CDC's response to four FOIA requests he submitted:  on March 11, 2005 (Count I); April 20, 2005 (Count II); April 23, 2005 (Count III); and December 14, 2004 (Count IV). *Id.* ¶¶ 6–43.  Defendants filed a motion for summary judgment on November 4, 2011.  Defs.' Mot. for Summ. J. [Dkt. # 11].  On December 15, 2011, plaintiff filed an opposition to defendants' motion, attaching twenty-nine exhibits.  Pl.'s Resp. to Defs.' Mot. for Summ. J. [Dkt. # 15].  However, he did not file a cross-motion for summary judgment at that time.

---

1   On January 25, 2012, the Court granted plaintiff's motion to remove Kathleen Sebelius and Thomas R. Frieden as defendants in this case and to replace them with the U.S. Department of Health and Human Services and the Centers for Disease Control and Prevention.  Order (Jan. 25, 2012).

On August 21, 2012, the Court granted in part and denied in part defendants' motion for summary judgment. *Hooker v. U.S. Dept. of Health & Human Servs.*, 887 F. Supp. 2d 40, 63 (D.D.C. 2012). The Court granted summary judgment with respect to several issues. First, it held that defendants conducted an adequate search in response to plaintiff's FOIA request in Count IV. *Id.* at 52–53.[2] Second, after an *in camera* inspection, the Court concluded that defendants properly withheld records under Exemption 5, *id.* at 45, 53–59; and that defendants complied with their duty to segregate exempt from non-exempt information in the records withheld or redacted under Exemption 5, *id.* at 62. Third, it found that "plaintiff's allegations of bad faith [were] insufficient to overcome the presumption of good faith due defendants' supporting declarations." *Id.* at 50 n.10.

The Court denied summary judgment with respect to two issues.

- Count I:  The Court stated that it could not conclude as a matter of law that defendants conducted an adequate search in response to plaintiff's FOIA request at issue in Count I. *Id.* at 50–52, 63. It explained that the description of the search for records "fail[ed] to explain either why [the] offices [to which the request was forwarded] were the reasonably likely locations of the records sought or [to] describe with specificity the search methodology used, including what records were searched, by whom, and using what process or search terms." *Id.* at 51.

- Segregability Under Exemption 6:  The Court found that for those documents withheld under Exemption 6, defendants had not met their burden of reasonably segregating non-exempt information for disclosure. *Id.* at 62–63.

Thus, the issues for which summary judgment was denied are the only two issues remaining in this case. To resolve the first issue, the Court instructed defendants to "amend or supplement their declarations with additional detail demonstrating the adequacy of their search" for records responsive to the FOIA request in Count I. *Id.* at 63. With respect to the second

---

2   Plaintiff did not challenge the adequacy of defendants' search for records in response to his FOIA requests in Counts II and III. *Hooker*, 887 F. Supp. 2d at 50 n.9.

issue, the Court ordered defendants to: "(1) conduct an additional review of records withheld under Exemption 6; (2) produce all segregable non-exempt information; and (3) submit a supplemental declaration demonstrating that they have complied with their duty to segregate exempt from non-exempt information" so that the Court can make a ruling on the issue of segregability. *Id.*

On the issue of segregability, defendants conducted a further review of all Exemption 6 withholdings and submitted a declaration on September 21, 2012 detailing additional materials that they had released to plaintiff and explaining the remaining withholdings. Supplemental Decl. of Katherine S. Norris [Dkt. # 27-1]. Regarding the adequacy of the search for documents responsive to Count I, defendants submitted another declaration on October 12, 2012 identifying the offices to which the request was forwarded, explaining why the request had been forwarded to those offices, and describing the search methodology including the records that were searched, the search terms, and who conducted the search. Supplemental Decl. of Katherine S. Norris [Dkt. # 28-1].

Based on these declarations, the Court issued the following order:

> In response to the Court's August 21, 2012 order, defendants have: (1) conducted an additional review of records withheld under Exemption 6; (2) produced additional segregable non-exempt information; and (3) submitted a supplemental declaration asserting that they have complied with their duty to search for responsive information and segregate exempt from non-exempt information. [Dkt. # 27 & 28]. Therefore, without rearguing any matters upon which the Court has already ruled, plaintiff shall inform the Court by October 25, 2012 of his position on whether the defendants have complied with the Court's August 21, 2012 order and whether there is any remaining reason why this Court should not enter judgment in favor of the defendants.

Minute Order (Oct. 15, 2012). This order was not an invitation for plaintiff to reopen the whole case. It simply invited plaintiff to address whether defendants' two supplemental affidavits resolved the two outstanding issues remaining after the Court's August 21, 2012 decision. The

3

instruction that plaintiff refrain from "rearguing any matters upon which the Court has already ruled" indicated that "any remaining reason" that plaintiff raised also had to fall within the confines of the two issues that were still before the Court.

In response to this order, plaintiff has filed several pleadings, declarations, and exhibits. On November 15, 2012, after receiving an extension of the original deadline, plaintiff filed his first response to the Court's order. Decl. of Dr. Brian Hooker ("Pl.'s Nov. 2012 Decl.") [Dkt. # 30]. On the same day, plaintiff also requested more time to file an additional response to defendants' pending motion for summary judgment. Mot. for Leave to File Additional Resp. to Pending Mot. for Summ. J. by Defs. [Dkt. # 31]. The Court granted plaintiff's motion. Minute Order (Nov. 16, 2012). On March 13, 2013, plaintiff filed his additional response as well as a cross-motion for summary judgment. Pl.'s Resp. in Opp. to Defs.' Mot. for Summ. J. and Pl.'s Cross-Mot. for Summ. J. [Dkt. #s 40 and 41].[3]

Defendants have moved to strike plaintiff's pleadings as unresponsive to the Court's October 15, 2012 order, untimely, and procedurally deficient. Defs.' Mot. to Strike Pl.'s Nov. 15, 2012 Resp. to Defs.' Mot. for Summ. J. [Dkt. # 32]; Defs.' Mot. to Strike Pl.'s Mar. 13, 2013 Resp. to Defs.' Mot. for Summ. J. and Pl.'s Cross-Mot. for Summ. J. [Dkt. # 42]. On April 23, 2013, the Court granted plaintiff's request to cure any procedural deficiency in his cross-motion for summary judgment and to re-file it. Minute Order (Apr. 23, 2013). On May 16, 2013, plaintiff responded to defendants' motion to strike his March 13, 2013 response. Pl.'s Resp. to Defs.' Mot. to Strike Pl.'s Mar. 13, 2013 Resp. [Dkt. # 49]. And on May 17, 2013, he re-filed his cross-motion for summary judgment with a statement of material facts not in dispute. Pl.'s

---

3  Plaintiff's pleadings in dockets numbers 40 and 41 are identical. Plaintiff attached a forty-one page declaration to these pleadings. Decl. of Dr. Brian Hooker [Dkt. #s 40-1 and 41-1]. However, plaintiff's own submission advised the Court that it need not pay attention to anything beyond page twelve of that declaration. Pl.'s Cross-Mot. at 2.

Cross-Mot. for Summ. J. [Dkt. # 50].[4] Defendants filed their opposition to plaintiff's amended cross-motion and their reply in support of their motion to strike on June 14, 2013. Defs.' Combined Reply in Supp. of Defs.' Mot. to Strike and Opp. to Pl.'s Cross Mot. for Summ. J. ("Defs.' Reply") [Dkt. #s 52 and 53].[5] The briefing on the two remaining issues in this case is now complete, and the case is ripe for decision.

## ANALYSIS

In its August 21, 2012 opinion, the Court set out what the defendants needed to do to fulfill their remaining duties under FOIA. *Hooker*, 887 F. Supp. 2d at 63. Defendants have submitted two affidavits detailing their compliance with the Court's instructions. Supplemental Decls. of Katherine S. Norris [Dkt. #s 27-1 & 28-1]. The Court has given plaintiff a full opportunity to respond to these affidavits. Plaintiff's pleadings, declarations, and exhibits fail to identify any reason why defendants' two affidavits are inadequate, and why the Court should not grant summary judgment on the two issues that the Court left open in its August 21, 2012 decision. Therefore, the Court will grant defendants' motion for summary judgment and deny plaintiff's cross-motion. As the Court noted in its initial opinion, plaintiff's passion and tenacity are understandable and commendable, but this narrow case is just not the proper forum for the airing of all of plaintiff's concerns about a possible connection between vaccines and autism. *See Hooker*, 887 F. Supp. 2d at 45.

1. <u>Defendants conducted an adequate search in response to the FOIA request in Count I.</u>

To fulfill its obligations under FOIA, an agency must undertake a search that is "reasonably calculated to uncover all relevant documents." *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). To satisfy its burden of showing that its search was calculated to uncover

---

4   All citations to "Pl.'s Cross-Mot." refer to plaintiff's corrected cross-motion [Dkt. # 50].

5   Defendants' pleadings in docket numbers 52 and 53 are identical.

all relevant documents, an agency must submit a "reasonably detailed" affidavit setting forth the search terms and the type of search performed. *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). The D.C. Circuit has held that "reasonably detailed" affidavits or declarations must "set[] forth the search terms and the type of search performed, and aver[] that all files likely to contain responsive materials (if such records exist) were searched." *Id*.

Thus, while the agency's affidavits or declarations "need not set forth with meticulous documentation the details of an epic search for the requested records," they must "describe what records were searched, by whom, and through what processes." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 91 (D.D.C. 2009) (internal quotation marks and citations omitted); *see also White v. DOJ*, 840 F. Supp. 2d 83, 89 (D.D.C. 2012) ("Defendant's affidavit explains what system was searched, the terms used, why it was likely to contain responsive documents, and that no other search method would reveal responsive documents. Although the affidavit could in theory be more detailed, that fact alone does not warrant denying summary judgment in favor of [d]efendant.").

Defendants have met their burden of showing that they conducted a search that was reasonably calculated to uncover all documents responsive to the FOIA request in Count I. In their October 12, 2012 declaration, defendants identified the offices to which the request was forwarded, explained why the request had been forwarded to those offices, listed the individuals in each office whose documents were searched, and described the search methodology including the records that were searched, the search terms, and who conducted the search. Supplemental Decl. of Katherine S. Norris [Dkt. # 28-1] ¶¶ 11–25. Defendants also averred that they had searched all files likely to contain responsive materials, and "[t]here were no other likely

locations of records responsive to Dr. Hooker's request." *Id.* ¶ 26. This level of detail cures the defects in defendants' prior description of the search. *See Hooker*, 887 F. Supp. 2d at 51.

Plaintiff challenges the adequacy of this search by pointing to three sets of documents that he alleges were responsive to his request but that defendants failed to produce to him. Pl.'s Mem. in Supp. of Cross-Mot. [Dkt. # 50] at 14–16. This challenge fails because it is well-established that an "agency's failure to turn up a particular document, or mere speculation that as yet uncovered documents might exist, does not undermine the determination that the agency conducted an adequate search for the requested records." *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004); *see also Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (citations omitted) ("[I]t is long settled that the failure of an agency to turn up one specific document in its search does not alone render a search inadequate. Rather, the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search."); *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) ("When a plaintiff questions the adequacy of the search an agency made in order to satisfy its FOIA request, the factual question it raises is whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant.").

Moreover, defendants have proffered evidence demonstrating that they produced the first two sets of documents to plaintiff on February 2, 2012. *See* Feb. 2, 2012 Supplemental Release, Ex. A to Defs.' Mot. to Strike Pl.'s Mar. 13, 2013 Resp. [Dkt. # 42-1] at 18–23; *see also* Defs.' Reply at 10–11. The third set of documents relates to 293 pages from National Immunization Program ("NIP"), a portion of which the CDC produced in response to an unrelated FOIA request by Jeffrey A. Trelka. Pl.'s Mem. in Supp. of Cross-Mot. at 15–16. Specifically, plaintiff

7

asserts that defendants' failure to provide him with 228 of those pages – which allegedly deal directly with the incidence of autism in Denmark – and their failure to search the records of individuals at NIP who were listed as email originators or recipients on those 228 documents demonstrate that defendants did not conduct an adequate search in response to the FOIA request referenced in Count I.  Decl. of Dr. Brian S. Hooker ("Pl.'s May 2013 Decl.") [Dkt. # 49-1] at 5–8.

This argument is a more detailed version of one that the Court rejected in its August 2012 opinion.  *See Hooker*, 887 F. Supp. 2d at 52 n.11 (holding that the release of documents to Mr. Trelka "has no bearing on the adequacy of [defendants'] search for the records requested by plaintiff.").  As the Court previously explained, the discrepancy between the documents produced to Mr. Trelka and those produced to plaintiff does not demonstrate the inadequacy of defendants' search because the scope of the two requests was different.  *Id.*  Plaintiff's FOIA request referenced in Count I sought correspondence relating to two specific studies published by authors in Denmark.  Compl. ¶ 6; Pl.'s FOIA request, Ex. B to Maloney Decl. [Dkt. # 11-3].  By contrast, Mr. Trelka sought:  (1) "all email correspondences between CDC NIP researchers and officials and Dr. Harald Heijbel and Peet Tull regarding thimerosal exposure levels in childhood vaccinations in Sweden"; and (2) all email correspondences between CDC NIP researchers and Diane Simpson, Paul Stehr-Green, Michael Stellfeld, and Preben-Bo Mortenson "regarding thimerosal exposure in Denmark and Sweden."  Trelka FOIA Request, Ex. A to Defs.' Reply [Dkt. # 52-2].

With respect to the 228 pages at issue, plaintiff has not alleged that these documents relate to the two autism studies that were the subject of his FOIA request; he only contends that they "deal directly with the autism incidence in Denmark."  Pl.'s May 2013 Decl. at 5.  But

8

defendants were not obligated to expand the scope of plaintiff's request to include all correspondences regarding the incidence of autism in Denmark, and their failure to do so does not undermine the adequacy of their search. *McKinley v. FDIC*, 807 F. Supp. 2d 1, 7 (D.D.C. 2011) (stating that there is no requirement that the agency must interpret a request more broadly "than the description reasonably contained in the request[]"). Since plaintiff has failed to present any arguments or evidence to undermine the adequacy of the search for documents at issue in Count I, the Court will grant defendants' motion for summary judgment on that count.

2. <u>Defendants have fulfilled their duty to reasonably segregate and produce non-exempt records that were previously withheld or redacted under Exemption 6.</u>

In the Memorandum Opinion, the Court directed defendants to "conduct an additional review of records withheld under Exemption 6 . . . [and] produce all segregable non-exempt information." *Hooker*, 887 F. Supp. 2d at 63. Even plaintiff acknowledges that defendants have conducted this review and produced additional documents that were previously withheld under Exemption 6. *See* Pl.'s May 2013 Decl. at 29–35 (detailing the additional information that defendants released based on the Court's August 2012 decision); *see also* Supplemental Decl. of Katherine S. Norris [Dkt. # 27-1]. However, plaintiff asserts that that this additional release "demonstrate[s] the fact that the CDC was improperly applying Exemption 6 in order to withhold information that would be at a minimum embarrassing to the CDC." Pl.'s May 2013 Decl. at 35. Plaintiff's use of the past tense – "CDC *was* improperly applying Exemption 6" – shows that he takes issue with the CDC's prior application of Exemption 6. Since defendants have complied with the Court's order, and plaintiff is not challenging defendants' current withholdings or

redactions under Exemption 6, the Court will grant defendants' motion for summary judgment on the issue of segregability under Exemption 6.[6,7]

3. <u>The adequacy of the searches for records in response to the FOIA requests in Counts II–IV and the question of whether defendants acted in bad faith are not properly before the Court.</u>

In his pleadings, plaintiff also challenges the adequacy of the searches for records at issue in Counts II, III, and IV and asserts that the CDC's withholdings were improper and in bad faith. Pl.'s Nov. 2012 Decl. at 1–2, 4–5, 6–8; Pl.'s May 2013 Decl. at 9–29; Pl.'s Mem. in Supp. of Cross-Mot. at 16–18. These issues are not properly before the Court. Therefore, plaintiff's arguments on these subjects do not constitute "any remaining reason why this Court should not enter judgment in favor of the defendants." *See* Minute Order (Oct. 15, 2012).

First, the adequacy of defendants' searches for the records at issue in Counts II and III is not before the Court because plaintiff did not challenge the adequacy of those searches in his complaint or at any time before the Court's August 2012 decision. *See Hooker*, 887 F. Supp. 2d at 50 n.9, citing Compl. ¶¶ 18–33 ("Counts II and III challenge only the withholdings and redactions of records under Exemption 5 and not the adequacy of CDC's search for records."). The Court has already granted summary judgment to defendants on Counts II and III as they

---

6 Since plaintiff is not challenging defendants' current withholdings and redaction under Exemption 6, the Court will also consider this issue to be conceded. *See Lewis v. District of Columbia*, No. 10-5275, 2011 WL 321711, at *1 (D.C. Cir. Feb. 2, 2011) (per curiam) (citation omitted) ("'It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.'").

7 Plaintiff also references unredacted documents that he received from Congressman Dr. Weldon to support his argument that the CDC improperly redacted information. Pl.'s Mem. in Supp. of Cross-Mot. at 18–19. However, the Court has already explained that "'[o]nce the records are produced the substance of the controversy disappears and becomes moot since the disclosure which the suit seeks has already been made.'" *Hooker*, 887 F. Supp. 2d at 47 n.5, quoting *Crooker v. U.S. State Dep't*, 628 F.2d 9, 10 (D.C.Cir.1980). So plaintiff's case is moot as to unredacted records that he has received from Dr. Weldon. *Id.* (noting that "challenges to any other documents later found to be released to plaintiff by Dr. Weldon are similarly moot").

were originally pled, and plaintiff has not moved to amend his complaint to include these new allegations. *Quinn v. Dist. of Columbia*, 740 F. Supp. 2d 112, 130 (D.D.C. 2010) (citation omitted) ("It is well established that 'plaintiff[s] may not, through summary judgment briefs, raise new claims' where such claims were 'not raise[d] [] in [the] complaint' and plaintiffs have 'not file[d] an amended complaint.'"). Even if the Court were to construe plaintiff's pleadings as a motion to amend his complaint to challenge the adequacy of those searches, that motion would fail because he has not satisfied Rule 59(e)'s stringent standard for setting aside the prior judgment and re-opening the proceedings on Counts II and II. *See Ciralsky v. CIA*, 355 F.3d 661, 673 (D.C. Cir. 2004), quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam) ("[O]nce a final judgment has been entered, a court cannot permit an amendment [of the complaint] unless the plaintiff 'first satisf[ies] Rule 59(e)'s more stringent standard' for setting aside that judgment.").[8]

---

8  A Rule 59(e) motion "'need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Ciralsky*, 355 F.3d at 671, quoting *Firestone*, 76 F.3d at 1208. Plaintiff has not alleged that there has been an intervening change in law or that the August 2012 decision was legally incorrect or caused manifest injustice. The only arguably "new evidence" that plaintiff points to is 1,450 pages of documents that the CDC produced in response to a Congressional request filed by Representatives Dan Burton and Bill Posey; plaintiff received at least a portion of these documents from Rep. Posey's office on October 26, 2012. Pl.'s Nov. 2012 Decl. ¶¶ 1(A), 4. Plaintiff argues that although a number of these documents were responsive to his requests in Counts II, III, and IV, the CDC failed to produce them to him or include them in the *Vaughn* Index. *See, e.g., id.* ¶¶ 1(A), 2(A), 3(A); Pl.'s Dec. 2012 Decl. [Dkt. # 34-1] ¶¶ 1(b), 1(c), 2(b), 2(d), n.1. Defendants have explained this discrepancy: "While [the Congressional] request overlaps in some areas with the four FOIA requests at issue in the present lawsuit, the request from Congress is not being handled in accordance with the FOIA process, and the scope of the request from Congressmen Posey and Burton far exceeds the scope of the requests from Plaintiff here." Defs.' Reply in Supp. of their Mot. to Strike Pl.'s Nov. 15, 2012 Resp. [Dkt. # 35] at 2 n.1. The Court has reviewed the two requests and agrees with defendants that there are a number of differences including the time periods and the types of documents requested. Therefore, this "new evidence" does not merit re-opening the proceedings to allow plaintiff to plead that the searches in Counts II and III were inadequate.

Second, the Court has already ruled that defendants conducted an adequate search with respect to the FOIA request referenced in Count IV, and plaintiff's affidavit is not the proper vehicle to ask the Court to reconsider that decision. Even if the Court were to construe plaintiff's pleadings as requests for reconsideration under Fed. R. Civ. P. 54(b), such requests would fail because plaintiff has proffered no new evidence, he has failed to demonstrate that the Court's August 2012 opinion was legally erroneous or manifestly unjust, and he has raised "no arguments for reconsideration the court had not already rejected on the merits." *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011). For example, in his May 2013 declaration, plaintiff contends that "[a]lthough the Court ruled on the adequacy of the CDC's search [in Count IV], there was no ruling regarding the appropriateness of [Dr. Robert Chen, then Director of CDC's Immunization Safety Office] destroying his email replies in light of the Federal Records Act of 1950 as amended." Pl.'s May 2013 Decl. at 22. But the Court addressed Dr. Chen's email retention procedures in its Count IV analysis and held that "the agency's search for Dr. Chen's email responses was adequate" in light of defendants' "repeated efforts to address plaintiff's concerns." *Hooker*, 887 F. Supp. 2d at 53. Further, since this is a FOIA case, the Court is not required to address the "appropriateness" of Dr. Chen's email retention procedures in light of the Federal Records Act of 1950 as amended.

Third, plaintiff also alleges that the CDC withheld documents that were responsive to his requests in bad faith. Pl.'s Nov. 2012 Decl. ¶ 5 ("CDC has improperly withheld and in fact hidden documents that are responsive to my original FOIA requests."); Pl.'s May 2013 Decl. at 14; Pl.'s Mem. in Supp. of Cross-Mot. at 8. The Court has already ruled that "plaintiff's allegations of bad faith are insufficient to overcome the presumption of good faith due defendants' supporting declarations." *Hooker*, 887 F. Supp. 2d at 50 n.10. And "Rule 59(e) . . .

'may not be used to relitigate old matters.'" *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n.5 (2008), quoting 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2810.1 (2d ed. 1995).[9]

---

[9] Plaintiff also attached a response to defendants' motion for summary judgment and a memorandum in support of that response to his November 15, 2012 affidavit. Pl.'s Resp. to Defs.' Mot. for Summ. J. [Dkt. # 30-11]; Pl.'s Mem. in Supp. of Pl.'s Opp. to Defs.' Mot. for Summ. J. [Dkt. # 30-12]. This opposition and memorandum reargue issues raised in plaintiff's December 15, 2011 opposition to defendants' motion for summary judgment. The Court has already ruled on these issues, and an opposition to a motion for summary judgment is not the proper place to seek reconsideration of these rulings. Moreover, even if the Court were to construe this response as a motion for reconsideration under Fed. R. Civ. P. 54(b), such a motion would fail because plaintiff has raised "no arguments for reconsideration the court had not already rejected on the merits." *Capitol Sprinkler*, 630 F.3d at 227.

**CONCLUSION**

Defendants have submitted declarations stating that they have resolved the two outstanding issues from the Court's August 21, 2012 ruling granting in part and denying in part their motion for summary judgment: (1) they have met their burden of reasonably segregating non-exempt information from Exemption 6 materials; and (2) they have provided information that allows the Court to rule as a matter of law that they have conducted an adequate search in response to plaintiff's FOIA request at issue in Count I. Plaintiff has failed to dispute, and thus conceded, the issue of segregability with respect to Exemption 6. With respect to Count I, plaintiff has also failed to demonstrate that the search for records was inadequate. Therefore, the Court will grant defendants' motion for summary judgment and deny plaintiff's cross-motion. In light of the denial of plaintiff's cross-motion for summary judgment, the Court will also deny defendants' motions to strike as moot. A separate order will issue.

/s/ Amy B. Jackson

AMY BERMAN JACKSON
United States District Judge

DATE: July 9, 2013